O

FILED
CLERK, U.S.D.C. SOUTHERN DIVISION

JUL 2 1 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH McLEOD,<br><br>          Plaintiff,<br><br>      vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. EDCV 09-2037 RNB<br><br>ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

      Plaintiff filed a Complaint herein on November 5, 2009, seeking review of the Commissioner's partial denial of his application for Supplemental Security Income ("SSI") benefits.[1] In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on July 7, 2010. Thus, this matter now is ready for decision.[2]

---

    [1]    Plaintiff had been found disabled for the closed period beginning on October 1, 2007 and ending on December 31, 2008.

    [2]    As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly determined that plaintiff's impairment had medically improved as of January 1, 2009.

2. Whether the ALJ properly considered plaintiff's 2009 treating physician's notes in determining medical improvement.

3. Whether the ALJ properly considered the State Agency's mental residual functional capacity findings and erred in failing to properly develop the record.

4. Whether the ALJ posed a complete hypothetical to the vocational expert.

## DISCUSSION

The ALJ found that, for the period from October 1, 2007 through December 31, 2008, the severity of plaintiff's drug-induced mood disorder with psychotic features met the criteria of Listing 12.02, and specifically the requirements of Section C of Listing 12.02.[3] (See AR 14.) Disputed Issue Nos. 1 and 2 both are directed to the ALJ's determination that plaintiff's mental impairment no longer met the criteria of Listing 12.02 after December 31, 2008.

As the ALJ noted, Section C of Listing 12.02 requires a medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with

---

[3] Under the Commissioner's regulations, the required level of severity for Listing 12.02 is met when the requirements in both Sections A and B are satisfied, or when the requirements in Section C are satisfied.

symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.    Repeated episodes of decompensation, each of extended duration; or

    2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Here, in finding that the medical evidence supported the opinion of the medical expert (Dr. Malancharuvil) that the C criteria for Listing 12.02 were met, the ALJ noted:

> "The claimant lived with his parents and needed constant reminding to follow through with simple chores and self hygiene; this instructions caused the claimant anxiety. The patient lacked the ability to self soother. It appears from the medical record that the claimant required the highly supportive living arrangement offered by his parents in order to function at the very minimal levels." (AR 14.)

Thus, the question becomes whether the medical evidence supported the opinion of Dr. Malancharuvil upon which the ALJ relied that the C criteria for Listing 12.02 no longer were met after December 31, 2008. (See AR 52.) Although Dr. Malancharuvil did not elaborate on that opinion, it does appear from his hearing testimony that his opinion that plaintiff's medical treatment had effectively improved plaintiff's mental problems so that he was functional as of January 1, 2009 was based

on the treating physician treatment notes contained in Exhibit 13F. (See AR 57.) Those treatment notes reflect that plaintiff did report some improvement from the medication and the ability to "focus more" on January 23, 2009 (see AR 311) and again on February 17, 2009 (see AR 309). **However, those treatment notes do not substantiate that plaintiff's mental problems had improved to the point that there no longer was any indication of continued need for a highly supportive living arrangement.** Put another way, the Court concurs with plaintiff that the operative words "some" and "more" do not denote a significant degree of improvement. Nor do they denote the ability to function outside of a highly supportive living arrangement. The treatment notes for January 23, 2009, reflect that plaintiff's father also reported that plaintiff was not back to normal yet. (See AR 311.) Indeed, the treating physician's findings on mental status examination included findings that plaintiff's behavior was "guarded" and his mood was "apathetic." (Id.) Further, the treatment notes for that date reflect that the treating physician felt plaintiff's condition warranted an increase in plaintiff's medication. (See id.) The same findings on mental status examination were made on February 17, 2009, except that the treating physician also found that plaintiff's affect was "flat." (See AR 310.)[4] On February 25, 2009, it was noted that plaintiff was not good with his hygiene and that his father "has to stay on him to get him to act" and that the therapist had suggested that the father place plaintiff "on a plan to increase his motivation and independence for his hygiene." (See AR 307.) The treatment notes for April 6, 2009, reflect that plaintiff's father had left a message that he would like to discuss having plaintiff start taking Depakote again because, when plaintiff went off it for 2 days, he was starting to have "flashes of anger" that lasted 1 to 2 days. (See AR 304.) The

---

[4] The Court notes that these were the same findings on mental status examination that the treating physician had made on December 4, 2008, during the closed period of disability. (See AR 290.)

treatment notes for April 15, 2009 reflect that plaintiff's father reported that plaintiff was calmer on the Depakote, but the father was "feeling somewhat overwhelmed"; that plaintiff was "not showering without prompts, not changing his bed, clothing or anything else unless his father really got after him; that the father was having difficulty getting plaintiff to go with him anywhere; and that plaintiff was just moving from the patio to the bedroom. (See AR 300.) The treatment notes for April 20, 2009 reflect essentially the same. (See AR 299.) They further reflect the same findings on mental status examination as the treating physician previously had found on December 4, 2008. (See id.)

The Court also notes that, at the administrative hearing, the ALJ implicitly accepted the proffer by plaintiff's counsel that, if called, plaintiff's father would testify that plaintiff just sat around all day, not doing anything; that plaintiff had to be told constantly to do something, such as cut the grass or take out the trash, but never did it; and that plaintiff would never work. (See AR 42.)

The Court therefore finds and concludes that the ALJ's determination that plaintiff's mental impairment no longer met the C criteria for Listing 12.02 after December 31, 2008 was not supported by the substantial evidence of record. This finding and conclusion renders it unnecessary to reach Disputed Issue Nos. 3 and 4.

## CONCLUSION AND ORDER

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Here, while it appears that plaintiff continued to meet the criteria of Listing 12.02 after December 31, 2008 and therefore is entitled to additional benefits, it is not clear whether plaintiff continues to meet the criteria of Listing 12.02 at the present time. Accordingly, this is not an instance where no useful purpose would be served by further administrative proceedings, or where the record already has been fully developed. Rather, the Court concludes that this is an instance where additional administrative proceedings still could remedy the defects in the ALJ's decision, including consideration of whether plaintiff is entitled to a further closed period of disability.

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: July 21, 2010

/s/ Robert N. Block

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE